**Malcolm JETER, Plaintiff-Appellant-Cross Appellee,**

**v.**

**STAR FISH & OYSTER COMPANY, Defendant-Appellee-Cross Appellant.**

No. 73-1007

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1973.

R. C. Edwins, Baton Rouge, La., Donald E. Brutkiewicz, Mobile, Ala., for plaintiff-appellant-cross appellee.

Thomas M. Galloway, Robert H. Smith, Mobile, Ala., for defendant-appellee-cross appellant.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge:

Pursuant to the Jones Act and general maritime law, seaman Jeter seeks to recover damages as well as maintenance and cure for injuries sustained as a result of the alleged negligence of Star and the unseaworthiness of its vessel, the M/V BABY ANN. The district court awarded Jeter maintenance and cure, including attorneys fees, but denied him damages. We affirm in part and reverse in part.

Jeter was the captain of the BABY ANN, a 70-foot fishing boat, which returned to Star's pier in Mobile, Alabama on the morning of November 11, 1970, from a 20–25 day fishing voy-

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New

York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

age with a catch of some 18,000-pounds. As was his usual custom, Jeter hired Hicks to tally his fish for him as they were unloaded and weighed. Star's unloading procedure was apparently somewhat unusual in that, instead of using a conveyor to transport the fish from the ship to land side, it hoisted the fish from the hold in wire baskets, weighed them on scales at the end of the pier, then placed the baskets on dollies and pushed them up the pier, which was uneven and inclined at about 15 degrees, to the fish house. Large fish often had to be weighed individually and were then manually dragged up the pier. As a result of pushing the fish-laden dollies up the pier and physically dragging the large fish across it, the dock became virtually covered with fish slime.

Jeter slipped and broke his ankle as he was walking down the pier to pick up his tally sheet from Hicks and to get his crew fish. Although Jeter had left the pier earlier and had turned over his tallying duty to Hicks, it is undisputed that he was on call at the time of his accident and, indeed, that he had to obtain the tally sheet to compare it with the company's tally before he could receive the crew's pay. The evidence is uncontroverted that Jeter slipped on fish slime, which is a natural secretion of fish that is generated during storage over a course of a voyage and that tends to act as a built-in preservative. Although a water hose was placed in the hold of the ship to melt the ice and improve the appearance of the fish by washing off some of the slime, no attempt was made to wash off all of the slime before the fish were removed from the hold. Despite previous complaints by Jeter and others concerning the unsafe condition of the pier caused by the presence of fish slime, particularly in light of the unevenness and incline of the pier, Star failed to take adequate remedial measures. While there is a sharp conflict in the evidence as to whether Star spread sand over the dock on the day in question prior to Jeter's accident and even though the district court failed to make a finding of fact on this point, on reviewing the entire record we find that the weight of the evidence is that Star failed to do so. In any event, it is undisputed that the pier was covered with fish slime at the time of the accident, that Jeter slipped on the fish slime, that Star failed to wash all of the slime off the fish before they were unloaded, and that the pier was uneven and inclined with no hand rails. After carefully reviewing all of the evidence, we are convinced that the district court's finding of fact that "[t]here was no evidence presented regarding the substance which caused Jeter to fall" is clearly erroneous. Accordingly, we also find that the court's conclusion of law that "it is impossible to conclude that plaintiff was injured as a proximate result of defendant's maintenance of its docks" is without foundation in fact. We hold, as a matter of law, that Jeter slipped on fish slime and injured himself and that "such injuries were proximately caused by [Star's] negligence. . . . " Gutierrez v. Waterman S.S. Corp., 1963, 373 U.S. 206, 207, 83 S.Ct. 1185, 1187, 10 L.Ed.2d 297.

Contrary to the court's holding below, Gutierrez is clearly applicable to the case sub judice. To us there is virtually no distinction between unloading defective bags of beans, the beans spilling onto the pier, and a seaman or longshoreman being injured by slipping on the beans and the present situation where Star failed, in light of the condition of its pier, to properly wash off the slime from the fish before they were unloaded, the pier consequently becoming covered with fish slime, and Jeter breaking his ankle by slipping on the fish slime. In view of our conclusion that Star was, in the circumstances here present, negligent in not thoroughly washing off the fish slime prior to unloading, we need not and do not decide if the presence of the slime on the fish—a desired condition as long as the fish are stowed—during unloading rendered the ship unseaworthy. But see Gutierrez, supra at 213–214, 83 S.Ct. 1185.

Because the district court concluded that Star had not been negligent, it did not consider the question of Jeter's com-

parative negligence. Jeter was familiar with the condition of the dock. Yet, at the time of his accident, he was wearing a pair of *unlaced* tennis shoes. It is unclear whether the soles of the shoes were smooth or had treads. It is clear, however, that on at least two occasions on the day in question Star's vice-president warned Jeter prior to his accident that his shoes were unsuitable for walking on fish slime, that he should change into a pair of shoes with cleats for better footing, and that if he continued to walk on the pier in the shoes he was wearing he was going to hurt himself. These warnings went unheeded. On remand, the district court is directed to make findings of fact and conclusions of law regarding Jeter's comparative negligence.

With regard to the district court's judgment of maintenance and cure to Jeter and the award of attorneys fees, we have carefully reviewed the record and find Star's contentions to be without merit. In this respect, the court's judgment is affirmed.

The case is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.